UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――

№ 15-CV-5314 (JFB)(GRB)

―――――――――――――

VALLEY STREAM FOREIGN CARS, INC. D/B/A SOUTH SHORE HONDA,

Plaintiff,

VERSUS

AMERICAN HONDA MOTOR CO., INC.,

Defendant.

―――――――――――――

**MEMORANDUM AND ORDER**
September 22, 2016

―――――――――――――

JOSEPH F. BIANCO, District Judge:

Plaintiff Valley Stream Foreign Cars, Inc. d/b/a South Shore Honda ("plaintiff" or "South Shore Honda") brings this action against defendant American Honda Motor Co., Inc. ("defendant" or "American Honda") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the New York Franchised Motor Vehicle Dealer Act. Defendant moves to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the Court denies in part and grants in part defendant's motion to dismiss. In particular, the Court concludes that plaintiff has failed to state plausible claims for breach of contract and for the violation of the New York Franchised Motor Vehicle Dealer Act, but has stated a plausible claim for breach of the implied covenant of good faith and fair dealing.

I. BACKGROUND

A. Factual Background

The following facts are taken from the complaint ("Compl."). The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

American Honda is the authorized distributor of Honda vehicles, parts, and accessories throughout the United States. (Compl. ¶¶ 4-5.) American Honda distributes new Honda vehicles through a network of authorized dealers that are responsible for selling Honda vehicles to retail customers, performing authorized warranty service on

Honda vehicles, and selling Honda parts. (*Id.* ¶ 5.) Plaintiff is an authorized Honda dealer that has operated in Valley Stream, New York since at least 2003 under the name "South Shore Honda." (*Id.* ¶¶ 2-3, 6.)

On or about January 10, 2003, American Honda and South Shore Honda entered into a Honda Automobile Dealer Sales and Service Agreement (the "Dealer Agreement"). (*Id.* ¶ 6.) The Dealer Agreement granted plaintiff the right to sell and service Honda products as a Honda dealer. (*Id* ¶ 7.) Article I of the Dealer Agreement states that "[t]his Dealer Agreement, together with the Attachments hereto, which are incorporated by this reference and the Policies and Procedures, set forth the rights and obligations of Dealer and American Honda with respect to current and potential customers and each other." (Dealer Agreement at 1.) The Dealer Agreement grants South Shore Honda "the non-exclusive right to sell and service Honda Products at [its] Authorized Location." (*Id.*) Article III states that South Shore Honda agrees to "[p]romote, sell and service Honda Products and serve American Honda customers according to the terms and conditions of this Dealer Agreement" and "[a]bide by all other terms and conditions of this Dealer Agreement, and American Honda's Policies and Procedures." (*Id.* at 2.) Article 24.20 defines "Policies and Procedures" as "the policies and procedures prepared by American Honda in its sole discretion based upon American Honda's evaluation of Dealer's business, American Honda's business, its Dealer body, and the marketplace, and which may be established and/or amended by American Honda from time to time." (*Id.* at 34.)

This case arises out of a dispute over a practice known as wholesaling, which is governed by American Honda's Wholesaling Policy (the "Wholesaling Policy"), a document that is separate from the Dealer Agreement. American Honda adopted a revised Wholesaling Policy in March 2004. (*See* Wholesaling Policy at 2.) The Wholesaling Policy defines wholesaling as "the sale or lease and delivery of new Honda . . . Vehicles to persons other than (1) the ultimate end user of such vehicles, or (2) leasing companies that do not engage in activities described more fully below in 1.1(b), or (3) another authorized Honda . . . Dealer." (*Id.* § 1.1.)[1] The preamble states that American Honda "believes that such wholesaling is inconsistent with the Honda . . . Automobile Dealer Sales and Service Agreement" which limits "authorized Honda . . . Dealers to retail sales and retail leases from the authorized Honda . . . Dealers' premises and prohibits the creation of additional dealership locations." (*Id.* at 1.) The Wholesaling Policy provides two examples of wholesaling: (1) "[t]ransfers to third-party resellers who sell or lease the new Honda . . . Vehicle to end users as new vehicles"; and (2) transfers to third-party leasing companies that operate showrooms and/or "otherwise engage in sales, lease or service activities typically done by authorized Honda . . . Dealers," such as "third-party leasing companies that display new Honda . . . Vehicles on their premises or hold new Honda . . . Vehicles in stock, advertise for sale or lease of new Honda . . . Vehicles from their premises, or accessorize new Honda . . . Vehicles for sale or lease to

---

[1] The Wholesaling Policy applies to Honda and Acura vehicles and dealerships. The ellipses in the portions of the Wholesaling Policy that are quoted indicate the exclusion of references to Acura, which are not relevant to this action.

2

end users," (*Id.* §§ 1.1(a)-(b).) The Wholesaling Policy also states that wholesaling does not include transfers of used vehicles, transfers to third parties who are end users and not resellers or lessors of new vehicles, and "[t]ransfers to leasing companies that do NOT operate showrooms or otherwise engage in sales, advertising and/or service activities typically done by authorized Honda . . . Dealers." (*Id.* § 1.1(c) (emphasis in original).)

Section Two of the Wholesaling Policy states that, "effective November 1, 1995," American Honda "will strictly enforce the Dealer Agreement and require that Honda . . . Dealers not engage in Wholesaling of Honda . . . Vehicles." (*Id.* § 2.) Section Three is entitled "Enforcement of Wholesaling Policy," and describes processes for circumstances in which wholesaling has occurred or is alleged to have occurred. It includes processes for the submission of reports by dealers to American Honda and for American Honda to conduct periodic audits of dealers, as well as the procedures for American Honda to make findings and for dealers to respond to such findings. (*Id.* § 3.) Section Four describes American Honda's "Remedies in the Event of a Violation," which include adjusting a dealer's allocation of vehicles, charging back incentives and marketing assistance, and not considering the dealer for any additional dealership locations for five years. (*Id.* §§ 4.1-4.4.) It also contains a provision stating that American Honda "considers <u>any</u> Wholesaling to be inconsistent with the Dealer Agreement" and thus, "reserves its rights to take appropriate action to prevent such Wholesaling." (*Id.* § 4.5 (emphasis in original).)

Plaintiff alleges that authorized Honda dealers located outside of plaintiff's Area of Statistical Analysis ("ASA")[2] are engaging in wholesaling by "utilizing . . . intermediaries to sell their Honda vehicles to customers who reside within [p]laintiff's ASA" and that, despite receiving information about this wholesaling, American Honda "has not initiated audits of those [d]ealers or otherwise taken any steps to curtail the [w]holesaling." (Compl. ¶¶ 27-28.) Plaintiff claims that American Honda has "failed to strictly enforce its Dealer Agreement" and that this has "negatively skew[ed]" American Honda's "evaluation of [p]laintiff's retail sales performance" and caused plaintiff to lose "numerous sales of Honda vehicles in its ASA and the profits generated from those sales," totaling at least $12 million. (*Id.* ¶¶ 30, 34-35, 40.)

B. Procedural History

Plaintiff commenced this action in Nassau County Supreme Court on August 17, 2015. American Honda removed the case on September 15, 2015. On December 9, 2015, American Honda filed the instant motion to dismiss. On February 2, 2016, plaintiff filed its opposition to defendant's motion to dismiss. On February 16, 2016, defendant filed its reply. Oral argument was held on

---

[2] The Dealer Agreement states that the ASA is "the geographical area used by American Honda and modified in its sole discretion from time to time for analyzing the representation provided by Dealer, in which Dealer's advertising, sales and service performance is evaluated by American Honda." (Dealer Agreement at 32.)

March 16, 2016. The Court has considered all of the parties' submissions.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that, in adjudicating this motion, it is entitled to consider "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

## III. DISCUSSION

### A. Incorporation by Reference

Plaintiff asserts that the Court should decide as a threshold issue whether American Honda's Wholesaling Policy is incorporated by reference to the parties' Dealer Agreement. Plaintiff states that, if the Court decides that the Wholesaling Policy is incorporated by reference to the parties' Dealer Agreement, it will proceed on its breach of contract claim and withdraw its claim for breach of the implied covenant of good faith and fair dealing. Alternatively, if the Court finds that the Wholesaling Policy is not incorporated by reference to the Dealer Agreement, plaintiff will pursue a claim for breach of the implied covenant of good faith and fair dealing, and will withdraw its claim for breach of contract.

Plaintiff states that it does not take a position on whether or not the Dealer Agreement and the Wholesaling Policy are incorporated by reference, but nevertheless presents case law supporting a finding that

4

the Wholesaling Policy is not incorporated by reference. (*See* Pl.'s Opp'n. at 4-6.) Defendant's position is that the incorporation by reference issue is "largely irrelevant" because incorporation by reference is not the "only way in which material outside the four corners of a contract can create an obligation" and that the "real question is whether a franchisee's promise to comply with policies that may be established by the franchisor from time to time is binding under New York law." (Def.'s Reply at 4-5 (emphasis omitted).) The Court addresses, as a threshold issue, whether the Wholesaling Agreement is incorporated by reference to the Dealer Agreement.

Whether an extrinsic document is deemed to be incorporated by reference is a matter of law. *See Sea Trade Co. Ltd. v. FleetBoston Financial Corp.*, No. 03-CV-10254 (JFK), 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) (citing *Camferdam v. Ernst & Young Int'l, Inc.*, No. 02-CV-10100 (BSJ), 2004 WL 307292, at *12 (S.D.N.Y. Feb. 13, 2004)). Under New York law, "[t]he doctrine of incorporation by reference requires that the paper to be incorporated into the written instrument by reference must be so described in the instrument that the paper may be identified beyond all reasonable doubt." *Kenner v. Avis Rent A Car Sys., Inc.*, 678 N.Y.S.2d 213, 214 (App. Div. 1998) (quotation omitted); *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) ("[T]he paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt*.") (emphasis in original). It "must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Bybyk*, 81 F.3d at 1201 (quoting *Lamb v. Emhart Corp.*, 47 F.3d 551, 558 (2d Cir. 1995)); *see also Adam Developers Enters., Inc. v. Arizon Structures Worldwide, LLC*, No. 13-CV-261 (DLI)(RML), 2014 WL 4828816, at *3 (E.D.N.Y. Sept. 29, 2014) ("To incorporate a document by reference, New York law requires that the document be referenced beyond all reasonable doubt."); *Federated Mut. Ins. Co. v. Woodstock '99, LLC*, 140 F. Supp. 2d 225, 228 (N.D.N.Y. 2001) (before a document will be deemed incorporated by reference, "the document to be incorporated must be identified with sufficient specificity" and "there must be a clear manifestation of an intent to be bound by the terms of the incorporated instrument").

Here, the Wholesaling Policy is not identified or described in the Dealer Agreement beyond all reasonable doubt. Article I of the Dealer Agreement states that "[t]his Dealer Agreement, together with the Attachments hereto, which are incorporated by this reference and the Policies and Procedures, set forth the rights and obligations of dealer and American Honda with respect to current and potential customers and each other." (Dealer Agreement at 1.) This clause clearly states the intention of the parties to incorporate the attachments to the Dealer Agreement by reference. It also specifically identifies and excludes policies and procedures from this class of incorporated documents. Moreover, the Dealer Agreement was executed in or about September/October 2003, whereas the revised Wholesaling Policy was adopted in March 2004. (Wholesaling Policy at 2.) It is common sense that a document not yet in existence could not be identified in the Dealer Agreement beyond all reasonable doubt. Though the Wholesaling Policy states that American Honda will "strictly enforce the Dealer Agreement" "[e]ffective November 1, 1995," it is not clear to the Court whether the Wholesaling Policy existed as a previous draft or in another form prior to its adoption date. Thus, the reference in the Dealer

5

Agreement to "policies and procedures" is no more than a "vague allusion[] to general classes of documents" and is not sufficient to incorporate the Wholesaling Policy by reference. *4Connections LLC v. Optical Commc'ns Grp., Inc.*, 618 F. Supp. 2d 178, 183 (E.D.N.Y. 2009) (stating that "vague allusions to general classes of documents is insufficient to incorporate referenced documents") (internal quotations omitted); *see also Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 163 (finding that a statement in the contract at issue—"*may* contain other terms and conditions"—was not sufficient to incorporate extrinsic representations into the contract); *Sea Trade Co. v. FleetBoston Fin. Corp.,* No. 03-CV-10254 (JFK), 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) (finding a document containing additional terms and conditions was not incorporated by reference into the contract because the contract made "reference only to general 'regulations' and 'rules'" and did not "expressly name the Terms and Conditions as the document that contained the applicable regulations"). Accordingly, the Court finds that the Wholesaling Policy is not incorporated by reference to the Dealer Agreement.

Plaintiff states that, if the Court finds that the Wholesaling Policy is not incorporated by reference to the Dealer Agreement, it will pursue only its claim for breach of the implied covenant of good faith and fair dealing. The Court thus dismisses plaintiff's contract claim and considers plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### B. Implied Covenant of Good Faith and Fair Dealing

Defendant moves to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing, arguing that it has no obligation to enforce the Wholesaling Policy.

"Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007). The covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" and "[i]n some cases, the covenant may even require affirmative steps to cooperate in achieving the contract's objective." *Id.* (internal quotation marks and citation omitted). However, "[t]he implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add [ ] to the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (internal quotation marks and citation omitted).

"In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d at 98. "Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact." *Id.* (internal quotation marks and citation omitted).

The Court finds that plaintiff has stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Plaintiff alleges that American Honda's

6

refusal to enforce the Wholesaling Policy has prevented plaintiff from exercising its right to earn profits from the sale of Honda vehicles. In the Wholesaling Policy, American Honda explicitly acknowledges the potential harm wholesaling can inflict on American Honda and its dealers, stating that "wholesaling is inconsistent with the Honda . . . Dealer Sales and Service Agreement" and that "transfers to intermediaries are detrimental to the best interest of [American Honda] since they undermine [American Honda's] authorized Honda . . . Dealer network, . . . impair the ability of [American Honda] to provide the highest level of customer satisfaction, create situations that tarnish the reputation of the Honda . . . Division and Honda's . . . authorized Dealers for quality automobiles and service, and lead to lost sales." (Dealer Agreement at 1.) Taking plaintiff's allegations as true, American Honda has received reports of wholesaling, but has chosen to abandon its stated intention to enforce the Wholesaling Policy in order to prevent acknowledged economic and reputational harm. This is sufficient to support a plausible claim that defendant is acting "arbitrarily or irrationally" in violation of the implicit covenant of good faith and fair dealing in the Dealer Agreement. *See Dalton v. Educational Testing Serv.*, 663 N.E.2d 289, 291-92 (1995) (stating that the implied obligation of each promisor to exercise good faith includes "a promise not to act arbitrarily or irrationally").

American Honda argues that the Wholesaling Policy does not impose upon it an enforcement obligation and that choosing not to "strictly enforce" the Wholesaling Policy is an "exercise of . . . discretion." (Def.'s Mot. to Dismiss at 10.) Furthermore, American Honda argues, the implied covenant of good faith and fair dealing cannot create new contractual rights and "[i]mposing an obligation on a franchisor to 'strictly enforce' its contractual rights against all franchises would obviously add a new, substantive, and burdensome contractual provision." (Def.'s Reply at 4.) In concluding that plaintiff has sufficiently stated a claim for breach of the implied covenant of good faith and fair dealing, the Court does not find that plaintiff necessarily has a right to the "strict" enforcement of the Wholesaling Policy. Instead, the Court finds plaintiff has adequately alleged American Honda has arbitrarily acted counter to its stated interest and the interest of its dealers by "**[t]aking no steps** to enforce its Wholesaling Policy" and, despite being made aware of wholesaling, "continu[ing] to turn a blind eye to the Wholesaling." (Compl. ¶¶ 31-32 (emphasis added).) Thus, the complaint does not simply allege a lack of strict enforcement, but rather a complete abandonment of any enforcement. If the practice of wholesaling is known and widespread, and American Honda is not taking any steps to curtail it, a plausible claim for breach of the covenant of good faith and fair dealing exists given the devastating economic and reputational impact that this practice is alleged to have on American Honda and its dealers. Where a contract contemplates the exercise of discretion, "[c]ourts have equated the covenant of good faith and fair dealing with an obligation to exercise that discretion reasonably and with proper motive, . . . not . . . arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (internal quotation marks and citation omitted).[3] Accordingly, defendant's

---

[3] American Honda urges the Court to consider a line of three cases in which courts have declined to find that franchisors were obligated to enforce franchise standards against particular franchisees. The Court does not find these cases persuasive. First, it is not

7

motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing is denied.[4]

## C. Franchised Dealer Act

Plaintiff argues that it plausibly states a claim against American Honda for the violation of New York's Franchised Motor Vehicle Dealer Act (the "VTL") § 463(2)(cc)(1) in alleging that American Honda permitted and sanctioned wholesaling by other Honda Dealers and their intermediaries, which created additional *de facto* Honda dealership locations within plaintiff's relevant market area (the "RMA"). Defendant argues that plaintiff's claim for the violation of the VTL must fail because there is no allegation that American Honda served statutory notice or entered into any written agreement to establish an additional Honda Dealer in the RMA as required by the statute.

Section 463(2)(cc)(1) regulates the locations at which a franchisor can establish additional dealerships, making it unlawful for a franchisor to "enter into a franchise establishing an additional new motor vehicle dealer or relocating an existing new motor vehicle dealer into the relevant market of an existing franchise motor vehicle dealer of the same line make unless the franchisor provides notice pursuant to the terms of this subdivision." N.Y. V.T.L. § 463 (2)(cc)(1). A dealer may sue to protest the addition of the new franchised dealership "following receipt of such notice." (*Id.*) A "franchise," is "a written arrangement for a definite or indefinite period in which a manufacturer or distributor grants to a franchised motor vehicle dealer a license to use a trade name, service mark or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or services related thereto . . . ." (*Id.* § 462(6).) The RMA is defined as a "radius of six miles of the

---

clear from the plaintiff's reply brief or the opinions in *Kilday v. Econo-Travel Motor Hotel Corporation*, 516 F. Supp. 162, 163 (E.D. Tenn. 1981) and *Costello v. Lungaro*, 54 F.3d 776, 1995 WL 290249 (6th Cir. 1995) (unpublished disposition), how the language in the applicable agreements compares to the language in the Dealer Agreement and the Wholesaling Policy at issue here. Although the Operations Manual at issue in *Staten Island Rustproofing Staten Island Rustproofing Inc. v. Ziebart Rustproofing Co.*, Bus. Franchise Guide (CCH) ¶ 8492 (E.D.N.Y. 1985) contains similar language regarding the necessity of establishing standards of performance for franchises, the manual does not describe the specific economic and reputational harm a particular practice would cause the franchise and the franchisees in the absence of enforced standards, nor does the franchisor undertake to "strictly enforce" those standards to prevent the acknowledged harm. Moreover, the courts in *Kilday*, *Costello*, and *Staten Island Rustproofing* addressed claims of breach of contract and breach of fiduciary duty, which, as discussed *infra*, the Court does not reach in evaluating defendant's motion to dismiss.

[4] American Honda also argues that South Shore has not alleged prohibited wholesaling in violation of the Wholesaling Policy, since it merely alleges that "intermediaries" are being used to sell vehicles to customers in plaintiff's ASA, and that certain intermediaries (*i.e.*, brokers) do not engage in prohibited wholesaling. As a threshold matter, the Court concludes that the complaint, by using the term "wholesaling" is clearly referencing only the prohibited conduct under the Wholesaling Policy. In short, the allegations regarding the Wholesaling Policy itself and the alleged violations of that Policy are sufficiently pled in the complaint to survive a motion to dismiss. The Court also notes that, to the extent American Honda asserts it does not have sufficient notice of the intermediaries plaintiff claims are being used in violation of the Wholesaling Policy, plaintiff states that it has given American Honda the names of more than 40 intermediaries that are in violation of the Wholesaling Policy. In any event, the Court concludes the complaint need not contain the identities of these alleged intermediaries or detail their activities to state a plausible claim.

8

intended site of the proposed or relocated dealer." (*Id.* § 462(15)(a).)

Plaintiff's complaint does not allege that American Honda has established, intends to establish, or has given any notice of the creation of an additional authorized dealership within six miles of plaintiff. Plaintiff concedes that none exists "to the best of [its] knowledge." (Pl.'s Opp'n. at 15.) The Court rejects plaintiff's argument that an allegation that American Honda created *de facto* Honda dealership locations by permitting other Honda Dealers in plaintiff's RMA to use "intermediaries" to sell vehicles to customers located in plaintiff's RMA is sufficient to state a claim for violation of the VTL; the statute on its face requires an allegation of written notice, which plaintiff has plainly failed to allege.

IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied with respect to plaintiff's claim for breach of the implied covenant of good faith and fair dealing, and granted in all other respects.

SO ORDERED.

———————————

JOSEPH F. BIANCO
United States District Judge

Dated: September 22, 2016
        Central Islip, New York
            \*   \*   \*

Plaintiff is represented by Steven Cohn and Alan Scott Zigman, Law Office of Steven Cohn, P.C., 1 Old Country Road Suite 420 Carle Place, New York 11514. Defendant is represented by John J. Sullivan, Hogan Lovells US LLP, 875 Third Avenue New York, New York 10022.